NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0054n.06
Filed: January 19, 2006

No. 04-4392

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

BRAD D. KENNEDY,                                    )
                                                    )
      Plaintiff-Appellant,                      )
                                                    )
v.                                                  )   ON APPEAL FROM THE UNITED
                                                    )   STATES DISTRICT COURT FOR THE
LONG TERM DISABILITY PLAN FOR                       )   SOUTHERN DISTRICT OF OHIO
EMPLOYEES OF HUNTINGTON BANC                        )
SHARES, ET AL.,                                     )
                                                    )
      Defendant-Appellee.                       )


BEFORE: SILER, CLAY, and ROGERS, Circuit Judges.


      **ROGERS, Circuit Judge.** Plaintiff Brad D. Kennedy appeals the district court's judgment

on the administrative record in favor of defendant UNUM Life Insurance Company of America on

Kennedy's claim under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §

1132(a)(1)(B). After reviewing the record, the parties' briefs, and the applicable law, this court

determines that no jurisprudential purpose would be served by a panel opinion and affirms the

district court's decision for the reasons stated in Magistrate Judge King's August 13, 2004, opinion

and order. Although Kennedy argues that the district court should have used a heightened arbitrary

and capricious standard of review because UNUM suffered from a conflict of interest, the precedent

in this circuit is clear that a conflict is taken into account only as a factor in the court's ordinary

arbitrary and capricious review.  *See, e.g.*, *Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 506 (6th Cir. 2005).  The district court properly granted judgment on the administrative record in favor of UNUM.  Its judgment is therefore AFFIRMED.

Case No. 04-4392
*Kennedy v. Long Term Disability Plan for Employees of Huntington Banc Share, et al.*

**Clay, Circuit Judge**, dissenting. I do not agree with the majority's wholesale adoption of the district court's decision to affirm the denial of Plaintiff Brad Kennedy's long-term disability benefits. While the district court correctly chose to use the arbitrary and capricious standard in reviewing Defendant UNUM Life Insurance Company's administrative decision denying Plaintiff benefits, the district court erred in finding that Defendant's decision withstood scrutiny under that standard. The evidence in the administrative record unquestionably supports Plaintiff's claim of physical disability, while Defendant's evidence in opposition amounts to nothing more than unsubstantiated conclusions and speculation. Therefore, I respectfully dissent.

The starting point for the analysis of an ERISA claim is the appropriate standard of review. In *Firestone Tire and Rubber Co. v. Bruch*, the Supreme Court held "that a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115 (1989). When the administrator has such discretion, the administrator's decision is reviewed under the arbitrary and capricious standard. *Id.* In this case, the long-term disability plan administered by Defendant does give such discretion: "When making a benefit determination under the policy, [Defendant] has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (J.A. at 195.) The district court thus did not err in its choice of the standard of review. Under this standard, this Court will uphold a plan administrator's decision if it is "rational in light of the plan's provisions." *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998)

- 3 -

(internal quotations and citation omitted). "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) (internal quotations and citation omitted).

Although the arbitrary and capricious standard was appropriate, I emphasize that "merely because our review must be deferential does not mean our review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." *Moon v. UNUM Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005). "Deferential review is not no review, and deference need not be abject." *McDonald*, 347 F.3d at 172. This Court has an obligation to scrutinize a plan administrator's decision to insure that plan members are not denied benefits on irrational, pretextual, or otherwise invalid grounds.

Moreover, while I concede that Plaintiff is not entitled to the "heightened" arbitrary and capricious standard as employed by the Eleventh Circuit,[1] under the arbitrary and capricious standard this Court must weigh as a factor Defendant's conflict of interest in being both the administrator of the plan and the payer of benefits under the plan. *See Firestone Rubber and Tire Co.*, 489 U.S. at 115. While many courts mechanically state that such conflict of interest is a factor, few courts actually analyze the nature and extent of any such conflict of interest. The district court's

---

[1]*See Brown v. Blue Cross & Blue Shield, Inc.*, 898 F.2d 1556, 1566-67 (11th Cir. 1990).

decision below is a prime example; the court recognized its obligation to consider the conflict of interest, and yet in its decision, the court spared only these words: "Notwithstanding the potential conflict of interest in this case, this Court cannot conclude that [Defendant] acted in an arbitrary and/or capricious manner." (J.A. at 327.) This cursory and conclusory language is self-evidently inadequate; it merely pays lip service to the Supreme Court's mandate to weigh a plan administrator's conflict of interest under the arbitrary and capricious standard. *See Firestone Rubber and Tire Co.*, 489 U.S. at 115 ("[T]hat conflict *must* be weighed as a facto[r] in determining whether there is an abuse of discretion." (emphasis supplied) (internal quotations and citation omitted).)

Perhaps most troubling is the fact that the conflict of interest in this case is quite palpable, not merely "potential." When Plaintiff filed his claim for disability, he was 33 years of age. Under the plan provisions, if Defendant found that Plaintiff suffered from a physical disability, it would have been potentially obligated to pay disability benefits to Plaintiff until he was 60 years of age. (*See* J.A. at 189.) It goes without saying that a decision finding Plaintiff physically disabled would have been very costly to Defendant. As the plan administrator and the payer of benefits, Defendant had a clear incentive to deny Plaintiff benefits and to hire employees who understood and conformed to this incentive. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005). "Under such facts, 'the potential for self-interested decision-making is evident.'" *Id.* (quoting *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.4 (6th Cir. 2000)). Viewing the arbitrary and capricious standard in the appropriate context, I now turn to the administrative record.

The record is replete with evidence supporting Plaintiff's claim of physical disability. Plaintiff underwent mandibular reconstruction in 1988. The surgery traumatized a nerve and has caused severe, atypical pain in the right side of Plaintiff's face. This pain has increased over the years. Plaintiff has been subjected to at least fifteen surgeries to mitigate the pain, but nothing has worked. Shortly after the last unsuccessful surgery, Plaintiff applied for long-term disability benefits. Three of Plaintiff's treating physicians, Dr. Shankland, Dr. Schulte, and Dr. Olejko, expressed the opinion that Plaintiff was disabled due to his physical pain. Moreover, Dr. Olejko specifically found that Plaintiff's pain was verifiable and not merely self-reported:

> Surgical exploration with biopsy of nerve tissue confirmed an organic, pathologic basis for his pain in that there was a nerve injury with a resultant traumatic neuroma of the right Trigeminal nerve. . . . [I]t is my opinion, based on a reasonable degree of dental and medical certainty, that [Plaintiff's] pain condition and pain diagnosis has an organic cause secondary to reconstructive surgery with a nerve injury and is not a self reporting problem or condition.

(J.A. at 151.)

Faced with this overwhelming evidence of physical disability, Defendant offered essentially two responses. First, doctors employed by Defendant found that Defendant's pain was self-reported and that the pain could not be medically verified. Second, doctors employed by Defendant were skeptical of Plaintiff's pain, as he had not changed his medical regimen or treatment in the period following his application for disability, suggesting that there had been no increase in pain. I will address these points in turn.

As to Defendant's contention that Plaintiff's pain was self-reported, the record simply does not support this argument. One of Plaintiff's treating physicians, Dr. Olejko, explicitly stated that the pain was not self-reported and that there was a verifiable medical basis for the pain. Defendant presented no evidence that suggested that the pain was self-reported, it pointed to no record in Plaintiff's medical history to support its position, nor did it even attempt to explain why Dr. Olejko's opinion was incorrect. In *Black & Decker Disability Plan v. Nord*, the Supreme Court held that a plan administrator is not required to give special weight to a treating physician's opinion. 538 U.S. 822, 834 (2003). A plan administrator may not, however, arbitrarily dismiss credible evidence of the claimant, including an opinion of a treating physician. *Id.* This was exactly what occurred in the instant case; the credible opinion of Dr. Olejko was ignored by Defendant with no reason or explanation. Without evidence, Defendant's mere incantation that Plaintiff's pain was self-reported did not negate the medical opinion of Plaintiff's treating physician and the supporting evidence which said otherwise.

Defendant's position that Plaintiff's pain was self-reported was especially suspect when considering that Defendant did not even conduct a physical examination of Plaintiff. I do not suggest that a physical examination of a claimant is necessary in all cases; indeed, a plan administrator may base its benefits decision on a file review, if the file supports its decision. The point, however, is that "the failure to conduct a physical examination . . . may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert*, 409 F.3d at 295. Here, nothing in the administrative record supported the notion that Plaintiff's pain was

merely self-reported, while Dr. Olejko's opinion was strong evidence that Plaintiff's pain was not self-reported. Had Defendant conducted a physical examination of Plaintiff, it may have discovered an articulable reason for finding Plaintiff's pain to be self-reported. Defendant's decision not to do so and to rely solely on the conclusory and self-serving determination that the pain was self-reported further illuminates the weakness of its position.

As to the lack of change in Plaintiff's medical regimen or treatment following his application for disability, Defendant speculated that this fact led to the conclusion that Plaintiff's pain had not increased, so that Plaintiff's pain at the time subsequent to his disability application was at the same level as when Plaintiff was working; in other words, Plaintiff suffered from the same, non-disabling level of physical pain. While this logic is appealing in its simplicity, it does not stand under closer inspection. First, and most obvious, Plaintiff's treating physicians stated that Defendant's pain had increased over time, and they stated that the pain was disabling. Second, Plaintiff had already undergone fifteen unsuccessful surgeries and a barrage of prescription medicine regimens; Defendant did not and could not point to any viable way in which Plaintiff could have in fact changed his medical regimen or treatment. Third, Plaintiff's behavior was more consistent with the explanation that he was depressed about his physical condition and that he had given up hope of ever alleviating the pain in his face. The record just does not support the argument that Plaintiff's pain remained at a non-disabling level.

In my view, the instant case does not present a close call; Defendant's decision clearly fails to meet the requirements of the arbitrary and capricious standard. "It is not enough for [Defendant]

to offer an explanation for the termination of benefits; the explanation must be consistent with the 'quantity and quality of the medical evidence' that is available on the record." *Moon*, 405 F.3d at 381 (quoting *McDonald*, 347 F.3d at 172). The quantity and quality of the medical evidence supported only Plaintiff's claim, while Defendant mustered only conclusions and conjecture. And it is no surprise that Defendant grasped at straws for its flimsy arguments; a good deal of money was at stake, and it was in Defendant's financial interest to deny Plaintiff's claim, no matter how irrational the decision. The administrative record, considered against the backdrop of Defendant's conflict of interest, demonstrates that Defendant's decision was arbitrary and capricious. I would therefore reverse.